UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAREK ARSHAKYAM,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF CALIFORNIA CITY DETENTION,<br><br>Respondent. | No. 1:25-cv-01780-DAD-AC (HC)<br><br><u>ORDER GRANTING IN PART PETITONER'S *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER</u><br><br>(Doc. No 9) |

This matter is before the court on petitioner's *ex parte* motion for a temporary restraining order. (Doc. No. 9.) For the reasons explained below, petitioner's motion will be granted in part.

**BACKGROUND**

Petitioner is a citizen of Armenia who entered the United States on an unspecified date in October 2024, and has been in immigration detention since October 28, 2024. (Doc. Nos. 6 at 6; 9 at 2.) On December 23, 2024, the Department of Homeland Security issued a notice to appear ("NTA") requiring petitioner's appearance before an immigration judge ("IJ") in Adelanto, California on January 2, 2025. (Doc. No. 6 at 6.) The NTA indicates that it was "issued after an asylum officer has found that [petitioner] has demonstrated a credible fear of persecution or torture." (*Id.*) On April 15, 2025, an IJ denied petitioner's applications for asylum, withholding of removal under the INA and Convention Against Torture ("CAT"), and deferral of removal

1

under CAT, and ordered petitioner removed to Armenia.  (*Id.* at 10, 12.)  Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), which remanded the matter back to the IJ for further proceedings.  (*Id.* at 20.)  Petitioner's hearing on remand before the IJ is scheduled for February 11, 2026.  (*Id.* at 23.)

On December 8, 2025, petitioner, proceeding *pro se*, filed a petition for writ of habeas corpus.  (Doc. No. 1.)  In his petition, he asserts one claim:  violation of the Due Process Clause under the Fifth Amendment.  (*Id.* at 6.)  On December 29, 2025, respondents filed an answer to the petition.  (Doc. No. 6.)  On January 9, 2026, petitioner filed the pending motion for temporary restraining order.  (Doc. No. 9.)  On January 13, 2026, respondents filed an opposition to the pending motion.  (Doc. No. 12.)[1]

**LEGAL STANDARD**

The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After Winter, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'"); *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

A plaintiff seeking a preliminary injunction must make a showing on all four of these prongs.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  The Ninth Circuit has also held that "[a] preliminary injunction is appropriate when a plaintiff demonstrates .

---

[1]  In their opposition to petitioner's motion for a temporary restraining order, respondents state that "[t]he government submits on the answer/return that it filed in response to the Petitioner's *pro se* habeas corpus petition."  (Doc. No. 12 at 1.)

. . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Id.* at 1134–35 (citation omitted).  The party seeking the injunction bears the burden of proving these elements.  *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *see also Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief.").  Finally, an injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter*, 555 U.S. at 22.

The likelihood of success on the merits is the most important *Winter* factor.  *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).  Plaintiff bears the burden of demonstrating that he is likely to succeed on the merits of his claims or, at the very least, that "serious questions going to the merits were raised."  *All. For Wild Rockies*, 632 F.3d at 1131.

**DISCUSSION**

**A.    Likelihood of Success on the Merits**

1.    Governing Detention Scheme

The parties disagree regarding the detention scheme under which petitioner is being held in custody.  Petitioner contends that he is subject to detention under 8 U.S.C. § 1225(b)(2) (Doc. No. 9 at 2), whereas respondents insist that petitioner has been detained under § 1225(b)(1). (Doc. No. 6 at 2.)

As one judge in the Eastern District recently explained:

> Section 1225(b)(1) applies to applicants for admission who are (1) "arriving in the United States" and are inadmissible under 8 U.S.C. § 1182(a)(6)(C) (for fraud or misrepresentation) or § 1182(a)(7) (for lack of valid documents); or (2) not natives or citizens of certain countries in the Western Hemisphere, inadmissible under 8 U.S.C. § 1182(6)(A) (for entry without admission or parole), inadmissible under 8 U.S.C. § 1182(a)(6)(C) or § 1182(a)(7), and have not affirmatively shown they have physically resided in the United States for a continuous period of two years prior to this determination.  8 U.S.C. § 1225(b)(1)(A)(i), (iii).    If a noncitizen subject to § 1225(b)(1) "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the [noncitizen] for an interview by an asylum officer."    8 U.S.C.

3

§ 1225(b)(1)(A)(i)-(ii).  If after conducting a credible fear interview the asylum officer determines that the noncitizen has a credible fear of persecution, the noncitizen "shall be detained for further consideration of the application for asylum."    8 U.S.C. § 1225(b)(1)(B)(i)-(ii).  However, if after conducting a credible fear interview the asylum officer determines that the noncitizen does not have a credible fear of persecution, the noncitizen may request review by an immigration judge.  8 U.S.C. § 1225(b)(1)(B)(iii)(I), (III).  The immigration judge shall review the negative credible fear determination expeditiously and "in no case later than 7 days after" a negative determination by an asylum officer.    8 U.S.C. § 1225(b)(1)(B)(iii)(III).  The noncitizen "shall be detained pending a final determination of credible fear of persecution and, if found not to have such fear, until removed."  8 U.S.C. § 1225(b)(1)(B)(iii)(IV).

*Amaya-Quinteros v. Corecivic, Inc*, No. 1:25-cv-01672-AC-P, 2025 WL 3687642, at *3 (E.D. Cal. Dec. 19, 2025) (footnotes omitted).  In contrast, § 1225(b)(2) applies to applicants "for admission" where "the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title."  8 U.S.C.A. § 1225(b)(2)(A).  "[§] 1225(b)(1) and § 1225(b)(2) thus describe separate and non-overlapping categories, and petitioner's detention was initially governed by the former."  *Kartashyan v. Warden of the Golden State Annex Detention Facility*, No. 1:25-cv-1526-DC-SCR, 2025 WL 3771343, at *4 (E.D. Cal. Dec. 31, 2025).

The timeline of events here supports a finding that petitioner is detained under § 1225(b)(1), as respondent contends.  The NTA that was issued to petitioner in December 2024 indicates that an asylum officer found petitioner to have a credible fear of persecution or torture. (Doc. No. 6 at 6.)  Petitioner applied for asylum, withholding of removal under § 241(b)(3), withholding of removal under CAT, and deferral of removal.  (*Id.* at 10.)  After the IJ ordered him removed and denied petitioner's applications for relief, he appealed the IJ's decision to the BIA. (*Id.* at 18.)  The BIA remanded the matter back to the IJ for further proceedings, which are still pending.  (*Id.*)  Moreover, although the IJ ordered petitioner removed, he is not subject to a final order of removal thereby subjecting him to detention under 8 U.S.C. § 1231(a) (the detention scheme that governs immigration detainees subject to a final order of removal), because the BIA has remanded petitioner's immigration case to the IJ to "consider the merits of [petitioner's]

4

applications for relief and protection from removal, providing a full and complete analysis of these applications." (*Id.* at 20). A "removal order is final only upon the earlier of (i) a BIA determination affirming the order or (ii) the expiration of the deadline to seek the BIA's review of the order. *Ocampo v. Holder*, 629 F.3d 923, 926 (9th Cir. 2010) (citation omitted). Neither of those circumstances are present in this case. Accordingly, the court concludes that petitioner's current detention is governed by § 1225(b)(1).

   2.  Due Process Claim

   Petitioner argues that respondents have violated the Due Process Clause of the Fifth Amendment because he has been held in immigration detention for longer than six months without a bond hearing. (Doc. No. 9 at 2.) In opposition, respondents contend that petitioner's claim must fail because his detention is mandated by statute, "despite its length." (Doc. No. 6 at 2.)

   The Ninth Circuit has expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional…." *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018). Detention beyond six months is generally deemed prolonged. *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). District courts in the Ninth Circuit have held that § 1225(b) detention for prolonged periods of time without a bond hearing violates due process. *See e.g.*, *Sufiiarov v. Warden, Otay Mesa Det. Ctr.*, No. 25-cv-03265-LL-DDL, 2026 WL 26079, at *3 (S.D. Cal. Jan. 5, 2026) ("The Court agrees with those courts that have found a noncitizen detained under § 1225(b) for a prolonged period without an individualized bond hearing may assert a constitutional right to due process."); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-cv-00098-SAB-HC, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) ("[T]he Court finds that unreasonably prolonged mandatory immigration detention without an individualized bond hearing violates due process."). In recognizing this principle, district court have often applied the *Mathews* test in assessing due process challenges such as this one in the immigration context. *Maksim v. Annex*, No. 1:25-cv-00955-SKO (HC), 2025 WL 2879328, at *4 (E.D. Cal. Oct. 9, 2025) ("[T]he Court finds application of the *Mathews* test in this case appropriate."); *Tigranyan v. Warden of Cal. City Detention*, No. 1:25-cv-01554-DJC-SCR, 2026

WL 91765, at *5–7 (E.D. Cal. Jan. 13, 2026) (applying *Mathews* in the § 1225(b) context).  The court will do so as well.  *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (outlining the applicable three factor test to include consideration of:  (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.")

As to the first *Mathews* factor, "the Court evaluates Petitioner's private interest in being free from detention against the government's stated interests in protecting the public from a risk of danger and any risk of flight to avoid removal."  *Maksim*, 2025 WL 2879328, at *4.  To date, petitioner has been held in immigration custody for 14 months.  "Compared to the six-month presumptive period set forth in *Zadvydas*, beyond which continued detention becomes prolonged, petitioner's detention qualifies as prolonged."  *Tigranyan*, 2026 WL 91765, at *5.  Petitioner has a substantial private interest in "freedom from prolonged detention."  *See Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011); *see also Idiev v. Warden of the Golden State Annex Det. Facility*, No. 1:25-cv-01030-SKO (HC), 2025 WL 3089349, at *5 (E.D. Cal. Nov. 5, 2025).

However, in considering this factor, the court must also take into account any actions taken by petitioner that contributed toward the length of their prolonged detention.  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1207–08 (9th Cir. 2022).  Here, the delay has largely been due to petitioner's own actions.  In this regard, petition has applied for asylum, withholding of removal, and deferral of removal, and when the IJ denied all of petitioner's applications, petitioner appealed that decision to the BIA.  Nonetheless, there is also no indication in the record that petitioner has received a bond hearing throughout the entire 14 months he has been in custody.  *Idiev*, 2025 WL 3089349, at *5 (finding the first *Mathews* factor weighed in petitioner's favor even though the length of detention was solely due to the petitioner's actions because they were detained longer than six months without a bond hearing); *Maksim*, 2025 WL 2879328, at *4 (same).  Thus, consideration of the first factor here weighs somewhat in petitioner's favor.

As to the second *Mathews* factor, the court considers "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335.  The "risk of an erroneous deprivation of [petitioner's] liberty interest is high" because "[h]e has not received any bond or custody redetermination hearing during his" 14-month detention.  *Jimenez v. Wolf*, No. 19-cv-07996-NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020).  Consideration of the second factor therefore weighs in petitioner's favor.  *Manukyan*, 2026 WL 84079, at *5 ("Given that Petitioner has been held without a bond hearing for over a year, and it is not clear when detention will end, the risk of erroneous deprivation weighs in favor of granting a bond hearing.")

As to the third *Mathews* factor, the court considers "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews*, 424 U.S. at 335.  The government undoubtedly has a substantial interest in effectuating removal.  *Demore v. Kim* 538 U.S. 510, 531 (2003).  However, "[t]he government interest at stake here is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." *Zagal-Alcaraz v. ICE Field Off.*, No. 3:19-cv-01358-SB, 2020 WL 1862254, at *7 (D. Or. Mar. 25, 2020), *report and recommendation adopted sub nom. Zagal-Alcaraz v. ICE Field Off. Dir.*, No. 3:19-cv-01358-SB, 2020 WL 1855189 (D. Or. Apr. 13, 2020).  "Providing a bond hearing would not undercut the government's asserted interest in effecting removal." *Idiev*, 2025 WL 3089349, at *5.  "[T]he minimal cost of conducting a bond hearing, and the ability of the [immigration judge] to adjudicate the ultimate legal issue as to whether Petitioner's continued detention is justified," leads to a conclusion that "the government's interest is not as weighty as Petitioner's." *Zagal-Alcaraz*, 2020 WL 1862254, at *7 (alterations in original) (citation omitted).  Therefore, consideration of the third *Mathews* factor also weighs in favor of petitioner.

Accordingly, the court concludes that all three of the *Mathews* factors weigh in petitioner's favor and that petitioner has therefore established a likelihood of success on the merits of his due process claim, thus satisfying the first requirement under *Winter*.

/////

7

### 3.    Irreparable Harm

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (internal quotation marks and citation omitted).  Above, the court has concluded that petitioner has established his likelihood of success on the merits of his claim that his prolonged detention without a bond hearing violates due process.  "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (citation omitted).  Accordingly, the court concludes that the second *Winter* factor weighs in petitioner's favor.

### 4.    Balance of Equities and Public Interest

"Where the government is a party to a case in which a preliminary injunction is sought, the balance of the equities and public interest factors merge." *Roman v. Wolf*, 977 F.3d 935, 940–41 (9th Cir. 2020) (citation omitted).  As to the third *Winter* factor, respondents present no argument regarding the last two factors.  Thus, respondents "fail to show that any harm they face here is more than minimal, and do not otherwise identify any material burden they would experience from issuance of the requested injunction." *Doe v. Chestnut*, No. 1:25-cv-01372-CDB (HC), 2025 WL 3295154, at *10 (E.D. Cal. Nov. 26, 2025).  As to the fourth *Winter* factor, "[t]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (citation omitted).  Therefore, the third and fourth requirements under *Winter* are met by petitioner here.

Accordingly, the court concludes that all of the *Winter* factors weigh in favor of granting petitioner's motion for temporary restraining order.

**B.    Remedy**

As noted at the outset, petitioner seeks immediate release or, in the alternative, a bond hearing before an immigration judge.  (Doc. No. 9 at 8.)  Here, the appropriate remedy is limited to an order requiring that petitioner be provided a bond hearing before an immigration judge.

*Idiev*, 2025 WL 3089349, at *6 (E.D. Cal. Nov. 5, 2025) ("The Court finds, consistent with other post-*Jennings* cases, that the appropriate remedy is a bond hearing before an immigration judge[.]").

**CONCLUSION**

For the reasons stated above,

1. Petitioner's motion for a temporary restraining order ordering respondents to immediately release petitioner from respondents' custody is DENIED;

2. Petitioner's motion for a temporary restraining order for a bond hearing before a neutral adjudicator is GRANTED as follows:

   a. Within seven (7) days of the issuance of this order, respondents shall provide petitioner with a bond hearing before an immigration judge where respondents shall bear the burden of establishing that petitioner presents a danger to the community or flight risk justifying petitioner's continued detention.

3. Under the circumstances of this case, petitioner will not be required to post a bond pursuant to Federal Rule of Civil Procedure 65(c); and

4. The parties are directed to file subsequent briefing on any impending motion for a preliminary injunction within fourteen (14) days from the date of the entry of this order.

IT IS SO ORDERED.

Dated:   **January 16, 2026**                    _____
                                                  DALE A. DROZD
                                                  UNITED STATES DISTRICT JUDGE

9