UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAREK ARSHAKYAM,<br>Petitioner,<br>v.<br>WARDEN OF CALIFORNIA CITY DETENTION,<br>Respondent. | No. 1:25-cv-01780 DAD AC<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner, an immigration detainee proceeding through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. Currently before the court are petitioner's Amended Petition for Writ of Habeas Corpus (ECF No. 32, originally filed at ECF No. 26-2) and Motion for Temporary Restraining Order (ECF No. 27), which respondents oppose (ECF No. 29). Because petitioner's detention of twenty-two months – since October 28, 2024 – is excessive in relation to the purposes of such detention and therefore violates substantive due process, the undersigned recommends that petitioner be released from respondents' custody, subject to reasonable conditions of release. Alternatively, the undersigned recommends the petition be granted on petitioner's procedural due process claim and that petitioner be provided with another bond hearing before an immigration judge/neutral adjudicator within seven days, at which the Department of Homeland Security ("DHS") must bear the burden of proof by clear and convincing evidence.

I. Factual and Procedural History

Petitioner is a citizen of Armenia who presented himself at the San Ysidro Port of Entry on October 28, 2024, seeking asylum in the United States after expressing a fear of persecution because of his sexual orientation if he returned to Armenia. ECF Nos. 6 at 6, 16. He was never admitted to the United States and has remained in immigration detention since that date. ECF Nos. 9 at 2. Respondents do not allege that petitioner has any past convictions or criminal history. ECF Nos. 6, 12, 15, 19, 29.

On December 23, 2024, the DHS issued a notice to appear requiring petitioner's appearance before an immigration judge ("IJ") in Adelanto, California on January 2, 2025. ECF No. 6 at 6-8. The notice indicates that it was "issued after an asylum officer has found that [petitioner] has demonstrated a credible fear of persecution or torture." Id. at 6.[1] Following a February 11, 2026 hearing, an IJ issued an order dated April 15, 2025 which denied petitioner's applications for asylum, withholding or deferral of removal under the Immigration and Nationality Act ("INA") and Convention Against Torture ("CAT"), and ordered petitioner removed to Armenia. Id. at 10-13 (April 15, 2025 Order).[2]

Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), which construed the appeal as a motion to remand or re-open and granted it on October 29, 2025. Id. at 16-20. The Board found that the IJ erred in evaluating petitioner's credibility and supporting

[1] A non-citizen taken into custody at or near the border without valid entry documents is normally ordered removed "without further hearing or review" pursuant to an expedited removal process. See 8 U.S.C. § 1225(b)(1)(A)(i). But if such non-citizen "indicates either an intention to apply for asylum . . . or a fear of persecution," then that non-citizen is referred for an asylum interview. See 8 U.S.C. § 1225(b)(1)(A)(ii). While awaiting this credible fear interview, the non-citizen is to remain detained. See 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). If an immigration officer determines after that interview that the non-citizen has a credible fear of persecution, "the [non-citizen] shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). At that point, the asylum applicant will receive full consideration of the asylum claim in a standard removal hearing.

[2] Petitioner is not subject to a final order of removal thereby subjecting him to detention under 8 U.S.C. § 1231(a) because a "removal order is final only upon the earlier of (i) a BIA determination affirming the order or (ii) the expiration of the deadline to seek the BIA's review of the order. Ocampo v. Holder, 629 F.3d 923, 926 (9th Cir. 2010) (citation omitted). Neither of those circumstances are present in this case.

evidence, as the IJ's "adverse credibility determination [was] not adequately tethered to the record" and he failed to sufficiently explain "the speculative implausibilities and conjectures, upon which he relied in his adverse credibility determination." Id. at 18. For example, the BIA found that the IJ had erroneously rejected petitioner's reports of anti-LGBTQ violence he had experienced in Armenia, and also mischaracterized evidence submitted from an LGBTQ advocacy group called Pink Armenia. Id. at 19. The BIA remanded the matter for further proceedings for the IJ to "consider the merits of [petitioner's] applications for relief and protection from removal, providing a full and complete analysis of these applications." Id. at 20. To date, ten months later, that analysis has still not taken place, although petitioner remains in custody at the California City Immigration Processing Center. ECF No. 1 at 1.

Petitioner filed a pro se petition for writ of habeas corpus on December 8, 2025, asserting that his prolonged detention violated his rights under the Due Process Clause under the Fifth Amendment. ECF No. 1 at 6, 9. On January 9, 2026, petitioner also filed motion for temporary restraining order, arguing that his period of confinement is no longer reasonable as "DHS is now continuously rescheduling court dates" and his detention appears indefinite. ECF No. 9 at 2. Respondents opposed both motions. ECF Nos. 6, 12.

By Order dated January 20, 2026, the Honorable Dale A. Drozd granted petitioner's motion for temporary restraining order in part, denying his request for release from custody but ordering respondents to provide a bond hearing within seven days. ECF No. 14 at 9.[3] Judge Drozd found that petitioner's detention appeared to be governed by 8 U.S.C. § 1225(b)(1), and district courts in the Ninth Circuit have held that § 1225(b) detention for prolonged periods of time without a bond hearing violates due process. Id. at 5. Furthermore, "[d]etention beyond six months is generally deemed prolonged. Id. (citing Zadvydas v. Davis, 533 U.S. 678, 701 (2001)). Applying the Mathews v. Eldridge, 424 U.S. 319, 335 (1976) balancing test, Judge Drozd concluded that all three Mathews factors weighed in petitioner's favor, demonstrating a likelihood of success on the merits of his due process claim. Id. at 5-7. Similarly, petitioner had

[3] At the time Judge Drozd issued his January 20, 2026 order, petitioner had another hearing scheduled to be held before the IJ on February 11, 2026. ECF Nos. 6 at 23; 14 at 2.

demonstrated he was entitled to injunctive relief under Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)). Id. at 7-9.

Petitioner was provided with a bond hearing, consistent with Judge Drozd's order, on January 26, 2026. ECF Nos. 20-21. The IJ denied petitioner's request for bond based on a finding that petitioner was a "flight risk" and that his requested relief was "wildly speculative," although petitioner's brother (who came to the United States with petitioner) was recently granted asylum. ECF No. 21.

With the assistance of newly-retained counsel, petitioner filed the instant amended petition for writ of habeas corpus on August 3, 2026 (ECF No. 32),[4] as well as a motion for temporary restraining order on August 4, 2026 (ECF No. 27). Both allege violations of petitioner's due process rights based upon his prolonged detention, which the court understands as presenting both substantive and procedural due process arguments. Specifically, petitioner alleges that he has been detained since October 28, 2024 (approximately twenty-two months). ECF No. 32 at 3, 8.[5] Ten (10) months have now passed since the BIA reversed his adverse asylum determination in October 2025 and remanded for reconsideration of the evidence. Id. at 8. During that period, the immigration court has reassigned petitioner's case to at least four different Immigration Judges, but no decision has been made on petitioner's asylum application because of repeated administrative delays by the government. ECF No. 32 at 3, 6-8.[6]

---

[4] Petitioner's counsel initially filed the amended petition without seeking leave of court (ECF No. 24), and it was therefore stricken (ECF No. 25). Petitioner then filed a motion for leave to amend the habeas petition (ECF No. 26), which was granted (ECF No. 28). Petitioner's amended petition, ECF No. 32, is therefore the operative petition.

[5] Because the court finds it appropriate to rule on the merits of the habeas petition, the court will cite to relevant portions of the amended petition rather than identical arguments presented in the motion for TRO.

[6] Petitioner represents that IJ Kuipers concluded that no further testimony was necessary in April 2026, because the evidentiary record was complete, and petitioner submitted a requested comprehensive post-remand brief summarizing the evidence. ECF No. 32 at 7. Although IJ Kuipers advised the parties at a May 4, 2026 hearing that a written decision would be forthcoming, no decision was issued and IJ Kuipers was subsequently reassigned. Id. Although respondents opposed petitioner's amended petition and motion for TRO "for the same reasons set forth in their prior filings," they did not substantively dispute or oppose any of petitioner's representations regarding recent immigration proceedings or the fact that the recent delays were solely attributable to the government. ECF No. 29.

Meanwhile, petitioner has not requested a continuance or otherwise delayed adjudication of his asylum application. Id. at 8. Under these circumstances, petitioner contends that his detention is unreasonably prolonged and no longer bears a reasonable relationship to its regulatory purpose. ECF No. 32 at 9.

II. Legal Standard

A writ of habeas corpus may be granted to anyone who is held in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c)(3); Magana-Pizano v. I.N.S., 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'" (citations omitted)). In federal habeas proceedings, the petitioner is required to prove their case by a preponderance of the evidence. Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).

"District courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order[.]" Lopez-Marroquin v. Barr, 955 F.3d 759 (9th Cir. 2020) (citation omitted); see also Zadvydas v. Davis, 533 U.S.678, 688 ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

III. Discussion

A. Petitioner's Substantive Due Process Claim

1. Governing Legal Principles

The Due Process Clause protects persons in the United States from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Id. at 693 (2001) (citations omitted); Wong Wing v. United States, 163 U.S. 228, 238 (1896) ("[I]t must be concluded that all persons within the territory of the United States are

entitled to the protection guarantied [sic] by [the Fifth and Sixth] amendments, and that even [noncitizens] shall not . . . be deprived of life, liberty, or property without due process of law."). "[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017). Those protections apply regardless of whether the noncitizen is "seeking admission" or is "admitted." Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537, 549 n.4 (2007).

"The Due Process Clause 'protects individuals against two types of government action': violations of substantive due process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (citation omitted). The substantive component of the Due Process Clause "forbids the government to infringe certain 'fundamental' liberty interests *at all*, no matter what process is provided, *unless* the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993) (citations omitted) (emphasis added); see also Regino v. Staley, 133 F.4th 951, 960 (9th Cir. 2025). Substantive due process protects noncitizens from confinement except in "special and narrow nonpunitive circumstances, where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." Zadvydas, 533 U.S. at 690 (internal quotations omitted) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992) and Kansas v. Hendricks, 521 U.S. 346, 356 (1997)); Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) (citing United States v. Salerno, 481 US. 739, 750-51 (1987), Foucha, 504 U.S. at 79, and Kansas, 521 U.S. at 360, 364) ("The Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment served the government's legitimate goals."); cf. United States v. Torres, 995 F.3d 695, 708 (9th Cir. 2021) (citing Salerno, 481 U.S. at 747) (holding that a "[substantive] due process violation occurs when [pretrial] detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose."). "At the least, [substantive]

due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson v. Indiana, 406 U.S. 715, 738 (1972). In the immigration context, "[substantive] [d]ue process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." Padilla, 704 F. Supp. 3d at 1172 (citing Zadvydas, 533 U.S. at 690-91).

By comparison, "'[p]rocedural due process rules are meant to protect' against 'the mistaken or unjustified deprivation of life, liberty, or property.'" Escobar Salgado v. Mattos, 809 F. Supp. 3d 1123, 1158 (D. Nev. 2025) (quoting Trump v. J.G.G., 604 U.S. 670 (2025) (per curiam) (quoting Carey v. Piphus, 435 U.S. 247, 259 (1978))).

In 2003, the Supreme Court upheld another mandatory detention provision—8 U.S.C. § 1226(c)—as constitutionally valid on its face. Demore v. Kim, 538 U.S. 510, 531 (2003). However, the Supreme Court did so with the understanding that mandatory detention under § 1226(c) constitutes a "very limited time" that "lasts roughly a month and a half in the vast majority of cases" and "about five months in the minority of cases in which the [noncitizen] chooses to appeal." Demore, 538 U.S. at 513, 529-30 & n.12. Several years later in Jennings, the Supreme Court held that § 1225(b) and § 1226(c) did not require periodic bond hearings and remanded the case before it without addressing the due process claims. Jennings, 583 U.S. at 312. Neither Demore nor Jennings forecloses an as-applied challenge to mandatory detention under § 1225(b). See Jennings, 583 U.S. at 312 (court did not address constitutional arguments because they were not considered below); Nielsen v. Preap, 586 U.S. 392, 420 (2019) (as-applied challenge to § 1226(c) not foreclosed). "An as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted), as amended on denial of reh'g (July 29, 1998).

2. Analysis

In analyzing substantive due process claims, several judges, including judges from this court, have adopted and applied the five-factor balancing test developed in Doe v. Becerra, 732 F.

Supp. 3d 1071, 1080 (N.D. Cal. 2024). See Doe v. Chestnut, 810 F. Supp. 3d 1169 (E.D. Cal. 2025); Rivas Campos v. Chestnut, 1:26-cv-DJC SCR, 2026 WL 1816190, at *8 (E.D. Cal. June 24, 2026). The five factors are:

> (1) the length of detention and whether it is excessive in relation to its regulatory purpose;
>
> (2) the government's contribution to any delay;
>
> (3) the evidence supporting the determination that detention is warranted to prevent flight risk or community danger;
>
> (4) whether the government interests in ensuring appearance at future proceedings and protecting the community could be protected through alternatives to detention that are less harsh; and
>
> (5) the conditions of detention and how they compare to conditions under which pretrial criminal detainees or people convicted of crimes are held.

Becerra, 732 F. Supp. 3d at 1080 (quoting Doe v. Becerra, 723 F. Supp. 3d 688 (N.D. Cal. 2024) (internal citations omitted)). Applying these factors, the undersigned concludes that petitioner's current detention violates substantive due process.

a. Length of Detention

While there is no clearly delineated threshold for when detention becomes prolonged in the pre-final order of removal context, Demore is instructive. As noted above, in Demore, the Supreme Court upheld § 1226(a)—another pre-final order of removal mandatory detention statute—on a facial challenge where confinement generally "lasts roughly a month and a half in the vast majority of cases" and "about five months in the minority of cases in which the [noncitizen] chooses to appeal." Demore, 538 U.S. at 51_3, 529-30 & n.12.

Here, petitioner has been detained twenty-two (22) months, which is four times as long as the minority cases discussed in Demore and is undeniably prolonged. See Chen v. Aitken, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (holding petitioner's seven-month detention under § 1225(b) was "prolonged" because it "has lasted well beyond the typical period described in

Demore" and "neither release nor removal are imminent.").[7]

The undersigned finds that petitioner's twenty-two months in immigration detention weighs in favor of finding a substantive due process violation.

b. Government Contribution to Delay

"The second factor is closely related to the first and addresses the reasons for any delays that have contributed to the duration of detention." Becerra, 732 F. Supp. 3d at 1083. On the record before the court, it appears the government is responsible for the most recent delays that have contributed to the duration of detention. Id.; see also United States v. Gelfuso, 838 F.2d 358, 359 (9th Cir. 1988) (the due process limit on the length of pretrial detention requires consideration of "the length of confinement in conjunction with the extent to which the prosecution bears responsibility for the delay that has ensued").

Petitioner's amended habeas petition describes in great detail the numerous delays in processing petitioner's asylum application that have been caused by the government's repeated transfers of judges and reassignment of petitioner's case to different IJs before a decision is issued, and respondents have not disputed any of petitioner's assertions about the procedural history of this case.[8] ECF No. 32 at 6-7. As noted above, petitioner presented himself for inspection at the San Ysidro Port of Entry, where he sought admission into the United States and expressed a fear of returning to Armenia, on October 28, 2024. ECF Nos. 6 at 6, 16. He has remained in detention since that date. Petitioner filed an application for asylum, withholding of removal, and protection under the CAT. After the IJ denied petitioner's application for asylum

---

[7] In the criminal pretrial context, the Ninth Circuit cautioned that twenty-one months was "approaching the limits of what due process can tolerate," "significant under any metric," and "deeply troubling." Torres, 995 F.3d at 709. The Ninth Circuit explained that the fact that detention had lasted so long "weigh[ed] in favor of recognizing a due process violation." Id. at 708. The court then proceeded to balance all the relevant factors against the length of duration to determine whether the twenty-one-month detention was constitutionally permissible in the pre-trial detainee's particular case. Id. at 709.

[8] Although petitioner did not submit exhibits verifying this recent procedural history, the court notes that respondents did not dispute any aspect of petitioner's summary of recent immigration proceedings – including the fact that recent delays in processing petitioner's asylum application are wholly attributable to the government. Accordingly, the undersigned accepts the allegations of the petition as admitted.

and related relief on April 2, 2025 (ECF No. 6 at 10-13), petitioner appealed that decision to BIA, which found error by the IJ and remanded the matter for further proceedings on October 29, 2025 (ECF No. 6 at 16-20). The BIA concluded that the IJ had erred in evaluating petitioner's credibility and had misconstrued supporting evidence of anti-LGBT violence and persecution in Armenia, and petitioner's asylum proceedings were accordingly reopened for further adjudication. ECF No. 6 at 19-20. Despite ten months of delays and petitioner's case being reassigned to at least four different IJs, that adjudication has still not been completed.

Specifically, following the BIA's remand, petitioner's case was scheduled for a master hearing on November 25, 2025. ECF No. 32 at 3, 6. The IJ directed the parties to file supplemental evidence by the end of December 2025, which petitioner did. Id. at 6. Before a decision could be rendered, however, the case was reassigned to a different IJ. Id. A hearing was scheduled for February 2026, but that hearing was postponed and the matter reassigned yet again. Id. at 7. On March 17, 2026, petitioner's case was assigned to a new IJ, who indicated the matter would be scheduled for hearing – but no decision was entered. Id. On April 10, 2026, petitioner's case was reassigned for a fourth time to a different IJ, who determined no additional testimony was necessary because the evidentiary record was complete. At the IJ's request, petitioner submitted a post-remand brief summarizing the evidence. Id. During a May 4, 2026 hearing, the IJ advised the parties he was not prepared to issue an oral decision but a written decision would be forthcoming. Id. at 8. To date, no written decision has been issued. Id. at 8. In July 2026, petitioner's counsel learned that most recent IJ had also been transferred before a written decision could be issued resolving petitioner's application. Id. Although petitioner's counsel has contacted the immigration court on "more than two dozen occasions seeking information regarding the status of the case," court personnel have been "unable to identify which Immigration Judge had been assigned the matter or provide any estimate as to when a decision would be issued." Id.

Petitioner asserts that "the evidentiary record is complete, all supplemental evidence has been filed, no additional testimony has been requested, and no further briefing remains outstanding." Id. As noted above, respondents have not challenged petitioner's assertion that

"[e]very delay following the BIA's remand has resulted from repeated judicial reassignments and administrative inaction by the Government, not from any request, conduct, or delay attributable to Petitioner." Id. at 8. The court also takes judicial notice the information provided on the Executive Office for Immigration Review's ("EOIR") Automated Case Information webpage, available at https://acis.eoir.justice.gov/en/ (last visited August 26, 2026). See Fed. R. Evid. 201 (court may take judicial notice of facts that are capable of accurate determination by sources whose accuracy cannot reasonably be questioned); see also City of Sausalito v. O'Neill, 386 F.3d 1186, 1224 n.2 (9th Cir. 2004) ("We may take judicial notice of a record of a state agency not subject to reasonable dispute."). The EOIR indicates that no future hearings are scheduled in petitioner's case, and his case status is simply "pending."

The court finds that the numerous judicial reassignments and delays described by petitioner are attributable to the government because "the immigration system is overextended[.]" Becerra, 732 F. Supp. 3d at 1083. This factor weighs in favor of finding a substantive due process violation.

c. Evidence of Flight and Danger Risk

Determining whether petitioner's prolonged detention has become punitive requires consideration of the extent to which it serves its regulatory purposes of preventing flight and danger to the community. "This inquiry requires evaluating the degree to which [Petitioner] poses a flight risk or danger, which in turn requires the Court to consider the evidence related to those risks." Rivas Campos, 2026 WL 1816190, at *9 (quoting Becerra, 732 F. Supp. 3d at 1086).

On the record before the court, the undersigned finds that petitioner presents a low flight risk. As discussed during his bond hearing, although petitioner has never been admitted to the United States, he has an uncle who is a United States citizen who has offered to provide him with a job as a cook. ECF No. 1 at 9. His brother, who came to the United States seeking asylum with petitioner, has recently been granted asylum. Petitioner hopes to "unite with my brother and . . . be with my family again." Id. His family ties in the United States weigh in his favor and against a finding that he is a flight risk.

With respect to dangerousness, there is no evidence in the record that petitioner has any criminal history. Petitioner denies ever having committed any crimes and asserts that instead, he has been the victim of persecution in his own country based on his sexual orientation. ECF No. 1 at 9; ECF No. 9 at 2. The undersigned therefore finds petitioner presents a low risk of dangerousness.

Next, flight risk and dangerousness "must . . . be considered in conjunction with the next related factor—whether any risks can be mitigated through alternatives to detention." Becerra, 732 F. Supp. 3d at 1087.

d. Alternatives to Detention

The next question is whether the government's interest in limiting the risks of flight and community danger can be adequately protected through alternatives to detention that are less harsh. If alternatives can mitigate risks and protect the government's interests, then detention (instead of one of these alternatives) is excessive in relation to those interests and unconstitutionally punitive. Id. at 1088.

With respect to flight risk, ICE's Alternatives to Detention (ATD) program, which includes GPS tracking via an ankle monitor and/or check ins via a smartphone application, telephone, or in-person appointments, can successfully mitigate the risk of flight. See id.; Rivas Campos, 2026 WL 1816190, at *11 n.11 (noting that with respect to the fourth factor, "there are routine and obvious conditions that ICE can impose, including check-in with ICE officials and electronic monitoring"). Current fiscal year 2026 data show that ATD programs are largely successful in minimizing flight risk. During this reporting period, participants in these programs appeared at 98% of hearings. See ICE, Detention Management, Detention FY 2026 YTD, Alternatives to Detention FY 2026 YTD and Facilities FY 2026 YTD, Footnotes, available at https://www.ice.gov/detain/detention-management#stats (last visited August 26, 2026). Fiscal year 2025 data shows similar results with participants in these programs attending 98.2% of hearings, including 86.4% of final hearings. Id.; Detention FY 2025 YTD, Alternatives to Detention FY 2025 YTD and Facilities FY 2025 YTD, Footnotes, available at https://www.ice.gov/detain/detention-management#stats (last visited August 26, 2026).

With respect to dangerousness, "in the abstract, ... someone who knows their location is being monitored will face at least some additional incentive not to engage in criminal conduct." Becerra, 732 F. 3d at 1088. Because ICE's ATD programs "can significantly mitigate the flight risk and potentially mitigate any danger to the community," this factor weighs in favor of finding that petitioner's continued, prolonged, indefinite detention, where he presents a low flight risk and low risk of danger, is excessive in relation to protect the government's interest in limiting risk of flight and danger to the community. See id.

e. Conditions of Confinement

"[W]hen a [civil] detainee is confined in conditions identical to, similar to, or more restrictive than, those in which his criminal counterparts are held, we presume that the detainee is being subjected to 'punishment.'" Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004).

Petitioner has asserted that he is detained in conditions like those of penal institutions, which have caused his health to deteriorate, as he has a heart condition and is experiencing insomnia and depression. ECF No. 1 at 9. Petitioner describes unreasonably limited telephone access, limited visitation hours, frequent lockdowns, grossly inadequate medical care, and only one hour of recreation time outside each day. ECF No. 9 at 5. He asserts that he is "unable to maintain a healthy diet, unable to maintain fitness, unable to maintain my basic hygiene, [and he is] restricted to shaving twice a week in the presence of my cell mate." Id. Petitioner asserts that his current conditions of confinement are causing psychological, physical and emotional harm.[9] Id.

Respondents have not disputed petitioner's representation that his current conditions of confinement are similar to or more restrictive than those in which petitioner's criminal counterparts are held. Accordingly, "the Court must weigh these conditions appropriately in considering the burden imposed by the duration of [petitioner's] detention." Becerra, 732 F. Supp. 3d at 1089. This factor weighs in favor of finding a substantive due process violation.

---

9 The court notes that other courts have also noted poor conditions at California City Detention Facility, where petitioner is currently detained. Rivas Campos, 2026 WL 1816190, at *12 (collecting cases).

f. Balancing of Factors

On balance, the court finds that petitioner's detention is excessive in relation to his low flight risk, which can be mitigated through very effective ATD programs. He presents a low risk of dangerousness, as he has no criminal history. His twenty-two month long detention without final adjudication, which has been prolonged by frequent judicial reassignments, appears primarily attributable to the government. There is also no evidence justifying his continued detention in conditions similar to those of penal institutions. Accordingly, the undersigned finds that petitioner's detention has become punitive, violates substantive due process, and recommends that the petition be granted on petitioner's substantive due process claim.

B. Petitioner's Procedural Due Process Claim

1. Governing Legal Principles

Alternatively, the court finds that petitioner is likely entitled to habeas relief based on violation of his procedural due process rights, due to his continued, prolonged detention since his initial bond hearing on January 26, 2026. ECF Nos. 20-21.

The undersigned notes at the outset that there is no binding authority governing whether petitioner is constitutionally entitled to a bond hearing after being detained for a prolonged period pursuant to 8 U.S.C. § 1225(b)(1), and if so, when that bond hearing is necessary. See e.g., Rodriguez Diaz v. Garland, 53 F.4th 1189, 1201 (9th Cir. 2022); Mohammed v. Warden of California City Det. Ctr., No. 1:26-CV-00118-DJC-CSK, 2026 WL 192368, at *2, 2026 U.S. Dist. LEXIS 13886, at *6 (E.D. Cal. Jan. 26, 2026) ("Nothing in the Supreme Court's decision in Jennings precludes Petitioner from bringing this as-applied constitutional challenge.").
In Jennings v. Rodriguez, the Supreme Court held there is no statutory right to a periodic bond hearing, even for noncitizens subject to mandatory detention, and reversed the Ninth Circuit because that court had "erroneously concluded that periodic bond hearings are required" every six months. 583 U.S. 281, 312 (2018). Importantly, the Court "had no occasion to consider respondents' constitutional arguments on the merits" and "remand[ed] the case to the Court of

Appeals to consider [the constitutional claims] in the first instance." Jennings, 583 U.S. at 312.[10]

Post-Jennings, many courts in the Ninth Circuit—including this one—have found that due process requires an additional bond hearing when a noncitizen subject to mandatory detention has been held for a prolonged period following the initial bond determination. See, e.g., Nasar v. Warden of California City Det. Ctr., No. 2:26-CV-00433-DC-AC (HC), 2026 WL 731160, at *3 (E.D. Cal. Mar. 13, 2026) (granting temporary restraining order and ordering a second bond hearing where nine months had elapsed since the petitioner had received a bond hearing during their detention under § 1225(b)); Quinteros v. Chestnut, No. 1:26-CV-3372-DC-CKD, 2026 WL 1587450, at *2 (E.D. Cal. June 3, 2026) (ordering a second bond hearing where nearly two years had elapsed since petitioner's first bond hearing during their detention under § 1225(b)); Marroquin Ambriz v. Barr, 420 F. Supp. 3d 953, 963 (N.D. Cal. 2019) (ordering a second bond hearing under § 1225(a) when petitioner's last bond hearing was nearly 15 months ago); Martinez v. Alfonso-Royals, 2025 WL 1866085 (W.D. Wash. July 7, 2025) (finding that the noncitizen petitioner who was subject to mandatory detention under 1226(c) was nonetheless entitled to a second bond hearing where five years had passed since first bond hearing); Rajnish v. Jennings, No. 3:20-cv-07819-WHO, 2020 WL 7626414, at *1 (N.D. Cal. Sept. 30, 2019) (same as to detainee who sought second bond hearing after nine months).

Accordingly, the court must determine whether the seven-month period between petitioner's initial bond hearing in January 2026 and the filing of his amended habeas petition has become unconstitutionally prolonged under the unique circumstances of this case. In so determining, the court must answer two questions: (1) "whether there exists a protected liberty interest under the Due Process Clause," and (2) "the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Nasar, 2026 WL 731160, at *4 (citing Garcia v. Andrews, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2

---

[10] The Court of Appeals, in turn, remanded the case to the district court to consider these and other arguments. Rodriguez v. Marin, 909 F.3d 252, 257 (9th Cir. 2018). In doing so, the court expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." Id. at 256.

(E.D. Cal. July 14, 2025)).

2. Analysis

a. Protected Liberty Interest

As to the first question, noncitizens maintain a well-established liberty interest in their freedom from detention that is protracted with no clear end in sight. See Zadvydas, 533 U.S. at 690, 693 ("[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."); Mohammed, 2026 WL 192368, at *3 (finding petitioner established a liberty interest protected by the Due Process Clause where petitioner's detention "will continue for a protracted and indefinite period," while the case proceeds before the immigration court, the BIA, and then Ninth Circuit, if either party seeks further review); see also Tigranyan v. Warden of California City Det., No. 1:25-cv-1554 DJC SCR, 2026 WL 91765, at *4, 2026 U.S. Dist. LEXIS, at *10-13 (E.D. Cal. Jan. 13, 2026) (concluding that a petitioner with a credible fear finding has established a protected liberty interest where his detention has lasted fifteen (15) months and he faces a protracted review of the merits of his asylum claim, which includes two potential appeals); Khaco v. Warden, No. 1:25-cv-1659 CSK, 2026 WL 295551, at *4, 2026 U.S. Dist. LEXIS, at *10-11 (E.D. Cal. Feb. 4, 2026) (same).

As discussed above, petitioner has been continuously detained since October 2024. He established a credible fear of return to Armenia, timely filed an asylum application and evidence, and appealed the immigration judge's removal order to the BIA. He has also met all subsequent deadlines for submission of supplemental evidence and briefs to the immigration court. Due to repeated judicial reassignments, no end to the adjudication of his asylum application appears to be in sight. It is uncertain when petitioner will be removed or released from immigration detention. Accordingly, the undersigned finds that petitioner has a protected liberty interest in his freedom from indeterminate civil detention.

b. *Mathews v. Eldridge* Balancing Test

As to the second question, courts that have considered what process is due to noncitizens who have had prolonged periods of detention following an initial bond hearing have employed

the three-factor test established in Mathews v. Eldridge, 424 U.S. 319 (1976), to make that determination. See e.g., Nasar, 2026 WL 731160, at *4; Martinez, 2025 WL 1870828 at *3; Rajnish, 2020 WL 7626414 at *8. The court agrees that the Mathews analysis is proper, as the Ninth Circuit has identified that analysis as "a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F.4th at 1207.

The Mathews analysis "generally requires consideration of three distinct factors" to determine the specific dictates of due process. Rodriguez, 53 F.4th at 1207 (citing Mathews, 424 U.S. at 334–35). Those factors are (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. Id.[11]

Here, petitioner has a substantial private interest in being provided with a renewed procedure by which he can argue for his release pending removal proceedings. Petitioner has been detained for over twenty-two months and has not been provided with the opportunity to argue for his release in the last seven months. Nor does it seem likely that petitioner will be afforded that opportunity anytime soon. Since his bond hearing, petitioner's asylum proceedings have been repeatedly continued due to IJ transfers and reassignments.

Courts within the Ninth Circuit have found that immigration detainees subject to similar periods of detention between bond hearings are entitled to a new bond hearing on due process grounds. See Nasar, 2026 WL 731160, at *4 (citing Rajnish, 2020 WL 7626414 at *10 ("For clarity, I do not hold that [the petitioner] is entitled to a new hearing [nine months after his initial bond hearing] merely because more than six months have passed. Instead, I apply Mathews and hold that, on these facts, this is the process due to [the petitioner].") Accordingly, the first factor

---

[11] This court previously applied the Mathews factors in its Order finding that petitioner's continued detention without a bond hearing was unreasonably prolonged as of January 2026, and therefore violated his procedural due process rights. ECF No. 14 at 5-8.

weighs in petitioner's favor.

The second factor, the risk of an erroneous deprivation of petitioner's liberty interest, also weighs heavily in petitioner's favor. Put another way, the value added by granting petitioner an additional bond hearing is great. Petitioner has now been held in detention for twenty-two months, and seven months have passed since his initial bond hearing. Civil immigration detention is "nonpunitive in purpose and effect," and is not justified where a petitioner is not a flight risk or a danger to the community. Zadvydas, 533 U.S. at 690. In his pro se petition, petitioner described how his health has rapidly deteriorated because of the penal-like conditions of his continued confinement. ECF No. 9 at 1. Petitioner has no criminal history; on the contrary, he has provided evidence that he was the victim of persecution and violence due to his sexual orientation in Armenia. While an IJ did previously determine that petitioner was a flight risk, the recording of the January 2026 bond hearing reflects reliance on the prior IJ's adverse credibility determination (even though that adverse credibility finding was overturned by the BIA due to numerous errors) as well as petitioner's lack of familial ties in the United States. ECF No. 21. Petitioner may be able to present new or additional evidence in a subsequent bond hearing showing changed circumstances to establish why his risk of flight is low and can be well-managed with alternatives to detention. For example, petitioner's brother, who came to the United States with petitioner, has been granted asylum in the United States, and petitioner has expressed his strong desire to "unite with my brother and . . . be with my family again." ECF No. 1 at 9. The second factor therefore also weighs in petitioner's favor.

As to the final factor, the court finds that respondents' interest in continuing to detain petitioner without an additional bond hearing is low. The court acknowledges the government's legitimate general interest in the steady enforcement of its immigration laws as well as protecting the public from noncitizens who have been determined to be dangerous, but also recognizes that the government's interest in detaining petitioner without any procedural protections is "low." Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025). Custody hearings in immigration court are routine and impose a "minimal" cost on the government. Doe, 787 F. Supp. 3d at 1094. In addition, limiting

detention to noncitizens who are shown to present a danger or a flight risk serve the government's and the public's interest by limiting "the fiscal and administrative burdens attendant to immigration detention." E.C., 2025 WL 2916264, at *11; see also Hernandez v. Sessions, 872 F.3d 976, 996 (9th Cir. 2017) (noting the "staggering" costs to the public of immigration detention). In short, the effort and cost required to provide petitioner with procedural safeguards is minimal. Thus, the burden imposed on respondents to providing petitioner with an additional bond hearing does not outweigh petitioner's substantial liberty interest and risk of erroneous deprivation.

Balancing these factors, the undersigned concludes that an additional bond hearing is warranted. Petitioner's interest is weighty, as his fundamental rights have been implicated for many months. At the time of the court's January 2026 decision, the BIA had recently remanded the IJ's decision and a February 2026 hearing with an IJ was imminent. In the seven months since that time, however, no progress has been made toward resolving petitioner's asylum application due to repeated delays and reassignments by the government, while petitioner continues to languish in penal-like conditions. A new hearing would serve a valuable purpose in combating erroneous deprivation of his constitutional rights, and the government's interest is not seriously undermined. The Mathews factors continue to weigh in favor of granting petitioner's request for habeas relief.

C. Remedy

The undersigned next turns to the appropriate remedy. Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require. Hilton v. Braunskill, 481 U.S. 770, 775 (1987). "[H]abeas corpus is, at its core, an equitable remedy." Schlup v. Delo, 513 U.S. 298, 319 (1995). "Moreover, in constitutional adjudication as elsewhere, equitable remedies are a special blend of what is necessary, what is fair, and what is workable." Lemon v. Kurtzman, 411 U.S. 192, 200 (1973).

The undersigned finds that the appropriate remedy for the substantive due process violation discussed above is release with standard conditions of supervision. Doe v. Chestnut, 810 F. Supp. 3d at 1202 (ordering release with "appropriate conditions so that the government's

significant interests in ensuring Petitioner's appearance at future proceedings, protecting the community, and that, if ordered removed, Petitioner will be successfully removed, are protected."); Zadvydas, 533 U.S. at 700 ("[T]he [noncitizen]'s release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions.").

Alternatively, given the passage of an additional seven months since petitioner's January 2026 bond hearing, the appropriate remedy for the procedural due process violation discussed above is a bond hearing before an immigration judge within seven days, at which the immigration judge must order petitioner released unless the immigration judge finds that petitioner is a risk of flight or danger to the community by clear and convincing evidence. See Van Luan Vu, 2026 WL 1623153, at *6; Maksim v. Annex, No. 1:25-cv-0955 SKO, 2025 WL 2879328, at *6, 2025 U.S. Dist. LEXIS 200588, at *17 (E.D. Cal. Oct. 9, 2025) (adopting clear and convincing evidence burden in similar circumstance). At any such hearing, the IJ should not rely upon the adverse credibility determination which has been found defective by the BIA.

Because release from confinement is the appropriate remedy for the substantive due process violation, the undersigned recommends that petitioner be granted immediate release on conditions of supervision rather than a second bond hearing. Furthermore, because the undersigned recommends granting petitioner relief on the merits of his amended petition, ECF No. 32, it is unnecessary to address petitioner's motion for temporary restraining order, ECF No. 27, which seeks the same or similar relief.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's amended petition for writ of habeas corpus (ECF No. 32) be GRANTED as follows:

    a. Respondents shall IMMEDIATELY RELEASE petitioner NAREK ARSHAKYAM, A-249-098-348, from custody, subject to standard conditions of supervision upon release.

b. At the time of release, respondents must RETURN all of petitioner's documents and possessions.

c. The order does not address the circumstances in which respondents may detain petitioner in the event petitioner becomes subject to an executable final order of removal and petitioner receives notice of that final order of removal.

2. Petitioner's motion for temporary restraining order, ECF No. 27, be DENIED as MOOT.

3. Within three days of an order adopting these findings and recommendations, respondents be required to file a notice of compliance confirming petitioner's release and the return of his documents and possessions.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). Within **three** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 28, 2026

Allison Claire

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE